Your Honor, Your Honor, would it be okay if I meet the Chair, Ms. Irishwood? Yes. Thank you. Okay, next argued case is number 18-16-27, Focal IP, LLC against Cisco Systems, Incorporated. Mr. Badak. Good morning, Your Honors. May it please the Court, my name is Hannah Madback, representing Appellant Focal IP. There are four issues on appeal today. Mr. Madback, I'd like, if you can, I want you to try a yes or no answer, or a clear answer. Does Focal, at a minimum, agree that the same or substantially similar claim construction issues were fully litigated in the 298 patent IPR? And if you don't agree, tell me why or why not. I don't agree. Okay, why not? My colleague John Murphy will address this. Okay, the next team, please answer Judge Wallach's question. Your Honor, we do agree that the same claim construction was briefed across all nine IPRs. And decided in the other, in the 298, the same claim construction issue. Correct, Your Honor. And if we were to say that that claim construction issue was collateral estoppel, you would lose here, right? Correct. Okay, thank you. Okay, do you want to continue with Mr. Murphy? How do you want to arrange this? So we have it divided up where Mr. Madback will handle the claim construction type issues and anything regarding the scope of the claim. Okay. I'm basically handling every other issue, collateral estoppel and prior art issues. However you decide to divide issues. Since we're on the collateral estoppel, let me ask you a question. Your argument as to why collateral estoppel does not apply is based on the theory that this was a consolidated proceeding. And it wasn't actually consolidated, right? I would disagree with that, Your Honor. It was consolidated. Where's the consolidation order? The consolidation was through a myriad of factors. One, they all have the same schedule. So there's no formal consolidation order? Well, it was formally consolidated where there's one oral argument. For example, there's one oral argument for all nine IPRs that start at 10 a.m. How does that mean consolidation? Well, I believe it was consolidated. Appellees in their brief, Your Honor, they acknowledge the fact that all nine IPRs were consolidated. Well, I think that you'd have to show that there was some sort of order of consolidation. But there isn't one. I mean the fact that they were argued together or that there are similar issues or whatever doesn't mean that they were consolidated. I would respectfully disagree, Your Honor. The same scheduling order was entered for all nine IPRs through the same order. There are several instances of several different orders where one order was issued on behalf of all nine IPRs. And there was only one decision issued? There was nine decisions issued. That's what I thought. Yes, sir. So how does that show consolidation? It shows consolidation because, as appellees also acknowledge in their responsive brief, that all the issues, even though they're across nine different decisions, they all use basically the same identical reasoning and claim construction analysis. But was the fact that there were nine decisions, was this something that the PTAB did at its initiative? Or how did that come into play? This isn't the first time that we've noticed that there's perhaps a single argument. And because there have been separate petitions, there have been separate decisions, which are almost identical, if not identical. Is that the situation here? That is the situation, Your Honor. The appellees in their responsive brief, they acknowledge the fact that even though there are nine separate decisions, the analysis is identical as the claim construction and patentability of the same prior art references. Okay. Now, I wonder, should we start again with your argument? Have we covered the points that you made? If you're honest, maybe I'll jump in. Well, I want to throw another one out while you're up there because I think you'll – do you further agree that the claim construction issues in 298 patent IPRs were similarly resolved adversely against FOCAL in the 1261 IPR and the other IPRs? Yes, Your Honor. The claim construction issues were identical. I knew you would. I just wanted to clear on the record. Okay. Would you start again with the timer for Mr. Mattock who diverted the argument? Okay. So I was saying that I would be handling the claim construction issues and my colleague John Murphy would be handling the other issues. Okay. On the claim construction issue, the most important issue relating to the interpretation of the disputed claim is whether the patentee properly disclaimed connecting the controlling device to an edge device or an edge facility. So the term in dispute here is a controlling device in communication with the switching facility. The patentee spent no less than two full columns of the specification, of the 12-column specification, explaining how connecting the controlling device to an edge device is the prior art. Where do the claims to which you're referring further define the type of connection that is required? If you're referring to – I'm referring to claim 18 of the 777 patent, which recites a controlling device in communication with the switching facility at column 15, lines 19 to 20, but they don't further define the type of connection required. Right. The type of connection required is actually in the preamble. If we read the preamble and open it up, we would – You agree that that language on its base is ambiguous, do you not? I do not agree. I respectfully do not agree that it is ambiguous. It is not ambiguous considering the specification and the extent to which the patentee went explaining what does the edge of the network mean and what does it mean to connect to the edge of the network versus connecting internally to the network. It's helpful to spend 20 seconds simply explaining that as we did on page 5 in our brief, where we show that class 5, the class 5 switches are the edge switches on the edge of the network. And the prior art, all that it did is connect it to these switches. Then we explain all the problems that are associated with that and how we solve them by connecting internally through class 4 switches in order to prevent these problems. You agree that the controller doesn't need to be connected directly to the tandem access switch, right? I do, Your Honor. It does not need to be connected directly. However, we clarify that it cannot go through an edge switch. It could be connected directly or indirectly, but it cannot go out of the network to an edge switch and come back in. That is the essence of the invention. The essence of the invention is not to connect through an edge switch. The reason why we say it could be connected directly or indirectly is because as the system evolved over the last 15 years, there are a lot of intermediary things that could go between the controller and the tandem switch. There could be a filter, a noise filter between those two devices, and then a potential infringer could say, well, you're not directly connected. The issue is not whether the connection is direct or indirect. It is whether it goes through the edge switch or not because of the functionality. Your problem, it seems to me, is that in the prosecution history on which you rely, the language that the applicant used seemed to be pretty clear that this is a broad invention which both covers tandem switches and edge switches. He said it facilitates application of features to call routing operations anywhere in the network, and he said it only says he's allowed to connect with a tandem switch, and it has this footnote that defines the switching facility in terms of both tandem and edge switches. So I'm having trouble seeing where this prosecution history supports your narrow construction of switching facility. Thank you, Your Honor, for bringing up footnote one because the appellees rely on this and the PTAB rely on this footnote, and it is notable to say that footnote one is always cited in and of itself and is never placed in the context of the paragraph. That's why I was mentioning this other language in the prosecution history. Where in the prosecution history does it say that our claims are limited to tandem switches? It is throughout the prosecution history, Your Honor. Just give me one example, not throughout. Of course. For example, again, there are dozens and dozens of places, but I'll cite one of them. For example, in overcoming the prior arch swab, and we referenced this in our brief on page 30. Now where – tell me where in the appendix I find a statement that you're – in the prosecution history, your invention is limited to tandem switches. Appendix 6307. 6307. 6307. Which volume is that in? Two. It's in two. Volume two. But I don't see it in the appendix. IC 6301. And all of this is also – I'm sorry. Where? IC 6301. And then the next page is 6497. What are you saying? 6307? Is that the page number? No. If I may direct the court to 6322. 6322? 6322. 6322. Where is that in the appendix? Well, basically – Judge Wallach, your appendix may be deficient because 6322 does appear in my version. Okay. Yeah. It happens. Well, it shouldn't happen. You know, you should be careful about the documents that you supply to us to make sure that they are complete and that each judge has the right copy. I apologize for this. I apologize that your version does not have – and we would happily supplement the court's record with the relevant section. But basically, just to go back to the point, that as we were distinguishing over Schwab, which was at the time that we introduced the term switching facility and then we described what a switching facility is, throughout that section, throughout that response to the office action, we talk about edge switches. We talk about how our invention is not an edge switch and how Schwab is an edge switch. Where do you say that your invention is not an edge switch? I don't see that. Well, if I may – Why don't you read it since I don't have it in front of me? If I may first refer you to the specification. Before we go to the prosecution history. Stick with the prosecution. Where in the prosecution history does it say our invention doesn't cover edge switches? Because the material I read to you earlier from the prosecution history seems to say the opposite. Here, on appendix 6223, applicant's architecture is not only distinct but significant improvement over Schwab or any of the other asserted by the examiner of record because it facilitates application of the feature to call routing operations anywhere in the network. This is what you read. Applicant's architecture permits subscribers to access call routing operation at the switching facilities that interconnect end offices to other geographic areas that are not local to an end office. That is the key. The fact that it interconnects – Yeah, but what that says is that this covers tandem switches, but it doesn't say it doesn't cover edge switches. That is your problem. By the mere amendment of the claims and overcoming Schwab by saying that Schwab is an edge switch and we are not and amending the claims to reflect – It doesn't say we are not. Where does it say we are not? It says applicants have amended the claim here to emphasize this distinction. Rather than simply refer to the PSTN, the claim now defines the various components of the PSTN architecture and indicates the point switching facility within the PSTN at which applicant system has access to apply these features requested by the subscriber to call routing operations. In column 3, line 46, and through column 3, lines 35 to 52, explaining another embodiment, quote, provisioning features by the internet under direct control of the subscriber, that coexist with and overlay the local phone service at the local level. Aren't you including edge switches? No, Your Honor. I respectfully submit that as you continue reading that section, it talks about how all of these devices fall short and they're required to subscribe to obtain 800 number. All of the implementations that include an edge switch, whether it is an 800 number or connecting the controller to the edge switch, have been fully disclaimed. The connection to the internet does not change that assertion because enabling a device to have access through the internet does not make it an edge switch. It simply enables access to it, to the network, but it is still a class 4. A tandem switch, if a tandem switch has access to the internet, that does not mean that it becomes an edge switch. There is a fundamental technical difference between switches that are inside the network  than the ones on the edge of the network. The edge of the network is similar to using your regular plain old telephone system. Your telephone system is connected to the edge. It cannot control inside the PSTN. The invention is all about controlling the tandem switch. That's just like lawyer testimony about what the invention is. We have to deal with the documentary record. I agree, and if I may submit, there are two columns in the specification. Before going to the prosecution history, there are two columns in the specification talking all about not connecting to the edge switch and connecting to the tandem switch. And this court has laid very clear law stating that no statements made during prosecution can recapture this claimed subject matter in the specification. And we have disclaimed that subject matter over and over and over again saying that we don't connect to edge switches, connecting to edge switches is bad, it has these problems. We solve these problems by connecting to the tandem switch. And I yield my time to my colleague John Murphy to argue the rest of the issues. Would you like to hear any other issues at this time? I know we're running out of time. No, you have your full time. We've run over with questions and we need to hear what you have to say. Thank you, Your Honor. Thank you, Your Honor. Would you like to hear anything else about collateral estoppel issues? Any other questions on collateral estoppel? The other issue is... Tell us what we need to know on the issue in order to appreciate your viewpoint. So there is an accepted rule out there where if the cases are consolidated, that you're outside the purview of issue preclusion because there was no first action and no subsequent action. So as we discussed earlier today, we believe that these cases are consolidated. There are supplemental authorities submitted by the appellees regarding the PAPS decision. We think that's distinguished because in that case, there was no consolidation. There were separate dates for oral arguments in PAPS. There was no facts indicating that there was any consolidation in there. And then another distinction on that point is here the court recognized in our case, sui sponte, this was consolidated. What are the policy implications of our just saying consolidation orders are irrelevant? Sorry, what? I said, what are the policy implications of our saying consolidation orders are irrelevant? Well, the policy considerations are it's a waste of litigant resources to pursue every single issue in a consolidated nature. We're trying to hone in on the precise issues that we'd like to cover. So rather than go through every single patent and every single issue like the motions to amend, we've always learned that if you want to try to win on appeal, you've got to narrow your arguments down to some bullet point rifle shots. So for us to go through and try and argue every single issue and every single patent in a consolidated nature, it's going to promote judicial inefficiency. It's also further not... The simple answer to that, which our decision in past notes, is that you get an agreement from the other side that there's no collateral estoppel by abandoning an appeal with respect to one of the patents. You didn't do that. Yes, sir, we did not do that. Yes, Your Honor, we did not do that. But we do believe that this has the consolidated nature that aligns with in re signus. And so that's what we're hanging our hat on. This is consolidated nature. Explain to me why FOCAL failed to present its constitutional arguments below. At the IPR level? Mm-hmm. It hasn't pointed to exceptional circumstances justifying that forfeiture. It's just been our experience that... I don't even think the PTAB has the authority to cite constitutionality issues. That's why we raise it for the first time here. It's not in their statutory authority. At the same time, they're not supposed to violate the Constitution. Yes, Your Honor. Just because they're an administrative agency. I think that's an interesting question. We don't hold you to an answer to it. Given the cursory briefing of the constitutional challenge, how do we get around Judge Moore's recent presidential opinion in trading tech where we expressly declined to address such a conclusory assertion? I'm not sure, Your Honor. I'm not familiar with that case. But here, this is a constitutionality issue. We are entitled, this is a retroactive application to the 777 patent that was issued before the AI was enacted. So now you have the same governmental body agency who handed us the patent and now wants to take it away from us without giving us our due process to be able to do a proper negotiation of claim scope. Were you here for the previous argument? Yes, Your Honor. Did you notice that the government intervened wanting to argue the constitutional aspect which had been raised in the briefs? And in due time, perhaps in that case, it will require our attention. In which case it would affect the entire PTAB operation, I would think. Yes, Your Honor. This is a global issue. I'm sure you deal with this issue all the time. But in our opinion, this is unconstitutional. You know, we try to do motions to amend in this case, and they're just not practical in the IPR setting. So for those reasons, you know, it's unconstitutional taking. Did you want to pursue the constitutionally, Mr. Murphy? Not on a three-page brief. I just don't think it's sufficient. Okay. We'll reserve the rest of our time for rebuttal, Your Honors. All right, let's hear from the other side, and we'll save you rebuttal time. I know four of you are arguing you will exercise restraint when the yellow light goes on. What's that, Your Honor? I missed that. Exercise restraint? Yes, I will. When the yellow light goes on. Oh, when the yellow light goes on. Yes, ma'am. Absolutely. Whatever Mr. Jones decides to do. I'm a military man. I exercise great restraint when I'm placed in these conditions. I'm just going to give you my comment. I think it's a terrible idea to have four people arguing. Yes, Your Honor. Let me clarify how we are having this structure. Yes, before we start, tell us how you've divided up the argument. So my intent would be that I would be handling the two threshold issues that we think dispose of the entire appeal. That is, the one that has already been touched on with respect to the final resolution of identical issues, admittedly identical issues, in the 298 patent, final written decisions, and how that precludes this appeal. And the second is that even if FOCAL were to convince you that their claim construction was correct and that the Board erred in its claim construction, the Board has already found that the claims are invalid under their claim construction. So those were the two primary issues. You're going into substance, but we just need to know how you're dividing the argument. And I think the government is here. The Council for Intervenor has reserved three minutes to address constitutionality issues. And the Council for WIMACS, Ms. Guske and Mr. Ricchetti are both here in the event that there is an issue that appeals directly to their individual IPRs for their individual client. If there's a specific question about those, because I was representing Wide Open West Technology in one group of the IPRs, and then these were each individual IPRs that were separately resolved. So that's why they're here. Okay. Thank you. We may not get to any of those questions. You may not have any questions on those issues, but they're here to present that. Okay. Proceed. Thank you, Your Honor. So on the issue that you've already raised with Appellant's Counsel, we think that the Federal Circuit's recent decision in PAPS is controlling on the facts of this case. And I know, Judge Dyke, you were on that panel, but these are the PAPS case, three IPRs of three different but related same-specification patents, same across the board. Materially similar claim construction and validity issues with respect to the teaching of a particular reference in all three patent IPRs, same. The PTAB decided similar issues in a similar way in those three separate final written decisions. Also the same here. And the court in PAPS found that the patent owner's voluntary action to dismiss the appeals of two of the patent's final written decisions rendered such decisions final. So the only distinction in our case is that the patent owner's voluntary act was to forego its opportunity to appeal the 298 final written decisions. And the legal consequence is identical. The challenge claims in the two PAPS patents are dead. The challenge claims in the 298 patent are dead. What the court found in PAPS was that the court held that the patent owner was immediately precluded from contesting the same issues in the last patent IPR appeal. That result is controlling on the facts of this case. The court distinguished the Cygnus and Inovad line of cases by saying these are distinct IPRs, which were resolved separately in separate final written decisions. That result is also controlling. Now, appellant's counsel does raise that we may have inartfully used the term consolidated in our briefing. We're not using that term in the context as it's used in collateral estoppel precedent. There were coordination for efficiencies done. But as PAPS noted, these are nine separate final written decisions. They conceded them. Yes. And so what I would say is the other question that you asked, which I think was a very astute question, was related to a policy consideration of this. And in issue preclusion, both efficiency and consistency are paramount considerations. And there is a number, and we have cited some of these cases, the Nestle case, the Ohio Wood case, and PAPS, that talk about the importance of consistency. Those precedents are controlling on this panel. Here, by statute, 35 U.S.C. 318B and this court's precedent, the moment that Focal's opportunity to file an appeal expired in February of 2018, the challenge claims of that patent were forever and finally invalidated, based on the board's final written decision on the identical appealed issues. So the practical matter is that neither the PTAB anymore nor this court have jurisdiction over the challenge claims of the 298 patent. So what the Cygnus line and the Inovad line of cases are dealing with is that you have every patent at issue is appealed. It's dealing with different parties. This case, the 298 patent was not appealed. That has legal consequences. And the policy consideration is that that final written decision is part of the file history. It is a part of the file history of all of these patents. And so by Focal asking you to ignore that, is asking, is really taking a second bite at the apple, because they're saying with respect to the unchallenged claims of the 298 patent, as well as the claims of all the related patents, we would have a file wrapper which has public notice, which everyone is relying on when they're construing claims of related patents, and they're asking you to enter an inconsistent decision with that. And that just wreaks havoc on the public notice function. And so we think, and again, from an efficiency standpoint, let's be clear. All Focal had to do was add the 298 patent and make a few citations to that record which were non-duplicative. That's not the point. The point is that they don't have to pursue it if they don't want to. They don't have to pursue it to avoid collateral estoppel. All they have to do is get you to agree that they can abandon it without suffering adverse consequences. Yes, Your Honor. They could have canceled. I think at PAPS they also noted the fact that they could have canceled the claims prior to, at some point prior to the final written decision issuing. I mean, there were a number of things that they could have done, but they did not do those. So we think that there's controlling precedent not only at PAPS, but also on the consistency that this Board has, and that consistency has immediate issue preclusive effect when you involve the same patent, when you involve unchallenged claims in the same patent. But there's also a controlling precedent that these are different inventions. That's why they're in separate patents. Yes, Your Honor. How do you overcome that? So the Patent Office actually admitted that there is, on this particular issue. Why do they have the burden? Why do they have that burden? No, Your Honor. Your Office hasn't required distinction, separation. I think that the controlling precedent is does any— And you're just arguing that one issue was the same, which was decided in the earlier case. That is correct, Your Honor. That is what we're arguing. I don't know if that—the question deals with does it alter the material question of invalidity. That is when you're looking at, let's say, dependent claims, when you're looking at different patents. And in this case, we have shown—I think our brief shows in great detail, and on the reply brief they do acknowledge that we are showing that on this particular issue, there is no material difference. But we already have the premise that this is a different invention and that these are factual questions. You have— When you have different patents, they're different inventions. Understood, Your Honor. And had the patent owner presented in the underlying IPRs a different argument with respect to patentability of any of those claims, it may have been different. They may have—we may have had competing differences, but they chose on their own to identify the identical claim term, the identical issue, make the identical argument across all the IPRs. They didn't do that because it was consolidated. Then you're saying that this is an admission rather than an estoppel. I don't—well, the—we don't need to rely on any admission. We're relying on our briefs. We've shown that it is—there is no material difference between these— between this—for this issue, these claim terms. You are relying on it. They admitted it. But I think to Judge Newman's point is whether I need—whether I'm relying on their admission, and I'm not. I'm relying on the proof as it has existed. This is perhaps a larger problem than in this case. We've seen in this case and in the prior case there are restriction requirements. There are multiple applications. There are multiple petitions after the office has granted multiple patents on which the patent owner has relied. And now we are in the argument phase that there are a lot of things that were done wrong in the office. They shouldn't have granted the patents. They shouldn't have done this or that. The board overrules its own—its own rulings of the patent office. And here we are with possibly conflicting results. Issues decided differently in different cases by different boards, sometimes by different judges on appeal or in the district court. So these are perhaps larger questions than those involved here, which we may be able to narrow to particular cases. But we can use your help. Yes, Your Honor, I would say that I think there may be broader issues, but the facts of this case are controlled by precedent like PAPS and precedent that when you don't have material differences between claims, when they do not alter the material question of invalidity of claims, that a final decision on an issue that has immediate preclusive effect for co-pending actions for actions. There's a number of cases, and I can—more cases than we even cited in our brief, and I can provide you with those cases if you'd like me to. There—I mean, the Nestle and Ohio Wood case are on this point, the Sovereign Software case, and it's precedent. Judge Deck, you were on most of these cases,  Direct Management, 778 Fed Third, 1311 Federal Circuit, 2014, and the XY LLC versus TransOva Genetics LC, 890 Fed Third, 1282. That's Federal Circuit, also 2018. And Judge Newman, you were on that panel with Judge Dyke. These are controlling precedent as to the immediate preclusive effect that is implicated when you have a final decision. So in our case, we have a final decision. There's no dispute over that. The statute governs that when the time for appeal has expired, that decision is rendered final. So the legal consequences of that are that it has an immediate preclusive effect across that issue. I thought you were telling us that the facts were specific to this case. Now you tell us that there are broad consequences from unrelated facts. There are broad policy considerations, Your Honor, with having inconsistent decisions. When you have an identical issue that is before — that is finally resolved, that this Court does not have jurisdiction over that issue with that patent, then to have an inconsistent decision, that would be rendered in that file history. Why is this jurisdiction? This isn't a matter of jurisdiction. Well, for the challenge claims of the 298 patent are forever and finally invalidated. It's just like — Jurisdiction means you can't consider it at all. I'm not saying that you — no, we need to consider it for an estoppel reason. Then why is it a matter of jurisdiction? It can be considered for a preclusive effect, but under PAPS in those controlling cases, it needs to be given — it needs to — I mean, once the issue is decided, then the appeal becomes moot. Well, all right. Are you ready to yield to your colleagues, or do you wish to use their time? I cede my time to Mr. Tyson. I cede my time. You can decide if you wish to receive their arguments or not. Really, the second issue I just want to touch on is on this claim construction issue. The Board, we believe, and I think there have been some very astute questions that have been asked, that they correctly found that there was no clear and unmistakable disclaimer in the specification of a controller coupled to a switching facility. Indeed, we were looking at a particular page of the file history, and when the patent owner wanted to claim a PSTN tandem switch and a PSTN, this is in our brief, our red brief, page 53, footnote 15. We identified three citations to, in this same amendment, where they identified claims that said they limited the network to the PSTN. They limited a switching facility to a PSTN tandem switch. But on this issue, even if they were to convince the Board that they erred, that the Board erred in, convince the Court that the Board erred in its claim construction, the Board decided that Focal's proposed amended claims, which Focal explicitly said were amended to incorporate the disclaimer, the Board found that those claims were invalid based on the Archer reference teaching the disputed limitation. There's a number of citations in our brief to this point. Focal's, their reply brief does not even address any of those citations. They're entirely silent. On page 10 of 13, they go through a number of citations. However, they don't reference any of the Board's final decisions on the amended claims. And other notably is that Focal did not appeal these adverse determinations on the amended claims, so those issues are final. So on this point, it is another controlling point, because what Focal has done is their briefing is not relying on the substantial evidence standard. They're not putting all of the evidence before the Board. We tried to do that in our brief. We had, we laid out for you really the evidence and arguments in multiple pages. But if you were to note and look at their reply brief, they do not cite anywhere Appendix 492 to 495 or Appendix 435 to 436. And those are where the Board, as we had put in our briefing, had rendered the claims invalid. So that's, unless the panel has any other questions on any issues, that's all I have. Well, of course there are questions. We need to decide the case. All right, and so you've exhausted your time. Is there anything critical that any of the three of you need to tell us? Is the government going to tell us that it's constitutional? Yes. All right, you have two minutes on the Constitution. Thank you, Your Honor. I just wanted to address briefly the point that the other side made on our forfeiture argument. We've argued that the constitutional arguments are forfeited because they weren't raised before the agency. And I just want to be clear that the Supreme Court has said in Thunder Basin, which is 510 U.S. 200, and in Elgin, which is 567 U.S. 1, that there is no categorical bar to an agency deciding a constitutional issue. And also in Elgin, the Supreme Court recognized that even if the agency couldn't remedy the constitutional problem, there are still reasons to require litigants to raise issues before the agency because the agency can opine on threshold and related issues. And lastly, I just wanted to point out that now they seem to be making a takings argument, and that is not an argument that they briefed at all in their opening brief, so we think that argument is doubly forfeited. And I'm happy to address any questions that the panel has on the merits or on the forfeiture issues. Otherwise, we'll rest on our briefs. Thank you, Your Honor. Thank you. Okay, you can decide how to use your five minutes. Thank you, Your Honor. As to all the cases that Mr. Tyson raised regarding collateral estoppel, they can all be distinguished by In re Signis if the Federal Circuit finds that this was a consolidated nature. In re Signis held that due to the consolidated nature of that multi-district litigation, that that was treated as a single action. So even though you had, in this situation, 298 IPR final written decisions coming out first, that was still part of the final, that's still part of the same action as all nine IPRs. And in re Signis says, if you do find this was a consolidated proceeding, that it's only treated as one action. Even though you may have, in the in re Signis, there's nine or ten or so different proceedings involved in that case similar to ours. So all the bodies of cases that Mr. Tyson cited can be distinguished on the consolidated nature of these nine IPRs as being treated as one action. As to the second point that he raised, that we never made any arguments regarding obviousness and substantial evidence, I would respectfully disagree. On page 14 of our reply brief, we have a global issue there where we say, this is what the board did improperly throughout its invalidity analysis. Filling in the gaps of a reference with knowledge of a person of varying skill in the art and the manner that the board used by the board is not proper. And there we say that that applies not only to Archer, but to all other obviousness holdings. That's exactly what the final written decisions did. What we're talking about, you know, based on the proper claim construction, connecting it to, you know, a tandem switch or any other switch except for an edge switch. None of that's disclosed in any of the prior art references on any of the grounds. So when the board did try and fill in these gaps, they did it using an improper claim construction that was overly broad. Or in the case of the motions to amend, they did this improper analysis where they said, oh, POSA could fill in the gaps. But none of the prior art actually discloses the feature. So, Your Honors, if you don't have any other questions, we'll rest our case. Thank you. Thank you. We appreciate it.